RENDERED: AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# 𝕮𝖔𝖒𝖒𝖔𝖓𝖜𝖊𝖆𝖑𝖙𝖍 𝖔𝖋 𝕶𝖊𝖓𝖙𝖚𝖈𝖐𝖞

# 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

NO. 2020-CA-000621-WC

AMAZON.COM                                                       APPELLANT


PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-18-98085


VICKIE HENRY; HON. ROLAND CASE,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                      APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **


BEFORE: GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: Amazon.com appeals from an opinion of the Workers'

Compensation Board (hereinafter referred to as the Board) which affirmed in part,

vacated in part, and remanded an opinion, award, and order of an administrative

law judge (hereinafter referred to as ALJ). The Board affirmed the findings made by the ALJ, but still vacated the award in order for the ALJ to make additional findings of fact in regard to whether Vickie Henry, Appellant's employee, is permanently and totally disabled. On appeal, Appellant argues that the Board should not have remanded for additional findings of fact as to Appellee's level of disability, that the ALJ erred in relying on the medical opinion of Dr. James Bilbo, and that the ALJ erred in not making other findings of fact as requested by Appellant. We conclude that the ALJ's findings regarding the level of disability were adequate, and the Board erred in vacating the award and remanding for additional findings. We also conclude that the ALJ did not err in relying on Dr. Bilbo's medical opinion. Finally, we hold that the Board erred in not requiring the ALJ to make more specific findings as to the impairment rating. Specifically, Appellant requested the ALJ to determine an impairment rating for each shoulder. This should have been done. We must, therefore, reverse and remand only for the ALJ to determine an impairment rating for each individual shoulder.

## FACTS AND PROCEDURAL HISTORY

Appellee was an employee of Appellant where she was required to routinely lift heavy items. On July 29, 2017, Appellee was performing her typical duties when she developed pain in her right shoulder and elbow. She was seen by Appellant's on-site medical care team, Amcare, given aspirin and an ice pack, and

she eventually returned to her duties.  She continued working, but would periodically present to Amcare for treatment.  On December 16, 2017, Appellee was lifting cases of water when she developed a severe pain in her left shoulder.  This injury also aggravated her right shoulder.  She again presented to Amcare, was given aspirin and an ice pack, and she later returned to her duties.

Appellee eventually began physical therapy at a medical facility called Concentra where she was diagnosed with a sprain or strain in both shoulders.  She was later seen by Dr. Sam Koo, an orthopedic surgeon, who diagnosed her with bilateral shoulder pain with no improvement after physical therapy.  Dr. Koo also diagnosed Appellee with bilateral shoulder rotator cuff tendinitis, and degenerative joint disease.  Dr. Koo recommended surgery, but Appellee declined.

Appellee also began treating at OrthoCincy, an orthopedics and sports medicine facility.  Her primary doctor there was Dr. Bilbo.  Records from Dr. Bilbo indicate a diagnosis of a right shoulder partial rotator cuff tear, bilateral tendinitis, adhesive capsulitis, bursitis, impingement syndrome, and acromioclavicular degenerative joint disease.  Dr. Bilbo opined that Appellee's conditions were related to her work injuries.  He also gave Appellee a 30% whole body impairment rating based on the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, Fifth Edition (hereinafter referred to as

the AMA Guides).  Dr. Bilbo also did not think Appellee could return to the type of work she was performing.  Dr. Bilbo also recommended surgery, but Appellee declined.

Dr. Steven Shockey also performed an independent medical evaluation on Appellee.  Dr. Shockey reviewed all of Appellee's medical records and treatment history regarding the shoulder injuries.  Dr. Shockey also performed a thorough physical examination.  Dr. Shockey diagnosed Appellee with shoulder pain with evidence of rotator cuff tendinopathy.  Dr. Shockey gave Appellee a 4% impairment rating for her right shoulder and a 3% impairment rating for her left shoulder based on the AMA Guides.  Dr. Shockey did not believe Appellee's injuries were caused by her work incidents, but that there could have been some degree of exacerbating a pre-existing condition.

After reviewing the medical evidence and Appellee's testimony, the ALJ relied on Dr. Bilbo's opinion and assigned Appellee a 30% impairment rating for the bilateral shoulder injury.  The ALJ did not assign an impairment rating for each individual shoulder. The ALJ also held that Appellee's injury was partial, not total.  Using the 30% impairment rating, the ALJ found that Appellee was entitled to a multiplication factor of 1.35[1] for a permanent partial disability rating of 40.5%.

---

[1] The permanent partial multiplication factors can be found in Kentucky Revised Statute (KRS) 342.730(1)(b).

The ALJ made other findings, but they are not relevant for the purposes of this Opinion.

Both parties then appealed to the Board. The Board affirmed the ALJ's reliance on Dr. Bilbo's opinion; however, the Board believed the ALJ did not perform the requisite analysis for determining if Appellee was entitled to permanent partial disability benefits or permanent total disability benefits. The Board remanded the case to the ALJ with instructions for the ALJ to analyze the issue in accordance with *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015), and *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000). Appellant requested that the Board remand in order for the ALJ to assign specific impairment ratings for each individual shoulder, but the Board declined to do so. This appeal followed.

## ANALYSIS

Appellant's first argument on appeal is that the Board erred in remanding the case back to the ALJ for the ALJ to determine if Appellee is partially or totally disabled. Appellant argues that the ALJ analyzed the issue appropriately and remanding the case was not necessary. We agree with Appellant.

"The function of further review of the [Board] in the Court of Appeals is to correct the Board only where [the] Court perceives the Board has overlooked

or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

> KRS 342.285 designates the ALJ as the finder of fact. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985), explains that the fact-finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986), explains that a finding that favors the party with the burden of proof may not be disturbed if it is supported by substantial evidence and, therefore, is reasonable.

*AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008). "The claimant bears the burden of proof and risk of persuasion before the [ALJ]. If he succeeds in his burden and an adverse party appeals to the [Board], the question before the [Board] is whether the decision of the [ALJ] is supported by substantial evidence." *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984).

> Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky.

App. 2002) (citations omitted).

The Board held that the ALJ did not properly analyze the partial or

total disability issue and instructed the ALJ to utilize the cases of *City of Ashland*

*v. Stumbo*, 461 S.W.3d 392 (Ky. 2015), and *Ira A. Watson Department Store v.*

*Hamilton*, 34 S.W.3d 48 (Ky. 2000), to do so. In *Thornsberry v. Ford Motor*

*Company*, No. 2018-SC-000203-WC, 2019 WL 1168021 (Ky. Feb. 14, 2019), the

Kentucky Supreme Court discussed these cases and clearly set forth how they

apply to this situation.

> In *City of Ashland v. Stumbo*, this Court outlined a
> five-step analysis for determining whether a person has a
> permanent-total disability under KRS 342.0011(11)(c).
> We later summarized that analysis as follows:
>
> > First, the ALJ must determine if the claimant
> > suffered a work-related injury. Second, the
> > ALJ must determine if the claimant does or
> > does not have an impairment rating. Third,
> > based on the impairment rating, the ALJ
> > then must determine the claimant's
> > permanent disability rating. Fourth, the ALJ
> > must determine whether the claimant is
> > unable to perform any type of work.
> > Finally, it must be determined that the
> > claimant's total disability is a result of the
> > work-related injury. In determining whether
> > a claimant is able to perform any type of
> > work [under step four], the ALJ must
> > consider "factors such as the worker's post-
> > injury physical, emotional, intellectual, and

-7-

> vocational status and how those factors
> interact."
>
> While it is not entirely clear from this analysis, the exact permanent disability rating is irrelevant to the determination of whether a claimant has a permanent-total disability. Instead, KRS 342.0011(11)(c) simply requires the claimant to have *a* permanent disability rating—and, necessarily, a permanent impairment rating—for the ALJ to find them totally and permanently disabled because they have a "complete and total inability to perform any type of work as a result of an injury." Whether the claimant has such an inability is then determined by weighing the factors set forth in *Hamilton.* Such factors include "the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact, [and] the likelihood that the particular worker would be able to find work consistently over normal employment conditions," which "is affected by factors such as whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities."

*Id.* at \*3-4 (footnotes and citations omitted). To summarize, there is a five-step analysis in *Stumbo* to determine if a person is partially or totally disabled and part four of that analysis requires the ALJ to examine certain factors found in *Hamilton*.

We believe that the ALJ met the *Stumbo* and *Hamilton* requirements. The ALJ found that Appellee's injury was work-related, assigned her a 30% impairment rating, and assigned her a 40.5% permanent partial disability rating. This satisfies the first three steps in *Stumbo*. As it pertains to the fourth step, the ALJ determined that Appellee could still perform some type of work. In making

this determination, the ALJ considered the following: that Appellee was born in 1961, that she has a high school diploma, that she has no specialized or vocational training, and that after her injury at Amazon she was employed by the Elks Club preparing food for $9.00 an hour. The ALJ also stated the following:

> Although the ALJ believes the [Appellee] to be a credible witness, he is not persuaded she is totally disabled. No physician specifically indicated she was totally disabled. Although she has significant restrictions in the use of her shoulders, she still has the ability to perform at least sedentary work or essentially any job not requiring significant lifting. The ALJ in view of the [Appellee's] education, work experience and restrictions, believes the [Appellee] could perform a wide range of occupations not requiring significant lifting.

We believe this meets step four of *Stumbo* and the factors found in *Hamilton*. As for step five, the ALJ found there was no total disability. It is clear that the ALJ satisfied the requirements of *Stumbo* and *Hamilton*; therefore, the Board erred in vacating Appellee's award and remanding for a new analysis.

Appellant's second argument on appeal is that the ALJ erred in relying on Dr. Bilbo's impairment rating because it does not comport with the AMA Guides. Appellant argues that Dr. Bilbo's rating did not follow the AMA Guides because Dr. Bilbo's medical records do not have any measurements indicating how he determined the impairment rating. Appellant also finds fault with Dr. Bilbo not setting forth an impairment rating for each individual shoulder.

Finally, Appellant believes Dr. Bilbo utilized the wrong impairment rating table found in the AMA Guides. We disagree.

"Under our law, the AMA Guides are an integral tool for assessing a claimant's disability rating and monetary award. So to be useful for the fact-finder, a physician's opinion must be grounded in the AMA Guides[.]" *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 154 (Ky. App. 2006). "To be *grounded* in the *Guides* is not to require a *strict adherence* to the *Guides,* but rather a *general conformity* with them." *Plumley v. Kroger, Inc.*, 557 S.W.3d 905, 912 (Ky. 2018) (emphasis in original). "The proper interpretation of the *Guides* and the proper assessment of impairment are medical questions." *Lanter v. Kentucky State Police*, 171 S.W.3d 45, 52 (Ky. 2005) (citation omitted). "Per our repeated standard of review articulated in these types of cases, unless the evidence compels a contrary finding, the ALJ's reliance on certain medical reports and opinions over others is entitled to considerable deference." *Plumley*, 557 S.W.3d at 914 (citation omitted).

Here, the medical records of Dr. Bilbo indicate that the ALJ did not err in relying on Dr. Bilbo's opinion. The medical records set forth Dr. Bilbo's examinations of Appellee, Appellee's complaints, range of motion measurements on both shoulders, and MRI results. Further, the ALJ relied on Appellee's testimony regarding her injury and her ongoing pain.

Dr. Bilbo also utilized table 16-35 of the AMA Guides to determine Appellee's impairment rating. Table 16-35 concerns measuring strength deficits of shoulders and elbows. Appellant points out that the AMA Guides state: "Decreased strength *cannot* be rated in the presence of decreased motion, painful conditions, deformities, or absence of parts (eg, thumb amputation) that prevent effective application of maximal force in the region being evaluated." AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT, Section 16.8a, p. 508 (5th ed. 2000) (emphasis in original). Appellant argues that Dr. Bilbo could not utilize an impairment rating based on a strength deficit because Appellee's shoulders had decreased motion and painful conditions. We believe Dr. Bilbo could still determine an impairment rating even if Appellee's shoulders had decreased motion and painful conditions. Dr. Bilbo's opinion only had to be grounded in the AMA Guides, not exactly adhere to it. Dr. Bilbo, in his medical opinion, could have concluded that a strength deficit rating for Appellee's shoulders was appropriate in her case. Appellee did not seek to depose or cross-examine Dr. Bilbo as to his methods. In addition, Dr. Shockey did not opine as to whether Dr. Bilbo's methods were incorrect.

We do agree, however, that the ALJ should have indicated impairment ratings for each individual shoulder. There were two separate injuries to two separate body parts. If Appellee ever seeks to reopen her claim due to a worsening

of the injury in one of her shoulders, individual impairment ratings would be needed. This, however, does not require the ALJ to disregard Dr. Bilbo's impairment rating or make his medical opinion invalid. In *Plumley*, *supra*, the claimant suffered three separate injuries, but the ALJ relied on a single, whole person impairment rating of 22%. The ALJ, therefore, separated that rating into three individual ratings for each injury. We must remand this case for the Board to instruct the ALJ to determine impairment ratings for each shoulder. On remand, the ALJ can separate Dr. Bilbo's 30% impairment rating into two ratings as occurred in *Plumley*.

Overall, the ALJ's findings and conclusions are based on substantial evidence. Relying on Appellee's testimony and the records and reports of Dr. Bilbo, the ALJ found Dr. Bilbo's impairment rating to be more credible. There was no error in relying on Dr. Bilbo's medical opinion.

Appellant's third argument on appeal is that the ALJ failed to make more specific findings of fact regarding Dr. Bilbo's impairment rating. We believe additional findings were unnecessary because Dr. Bilbo's opinion, and the ALJ's reliance on it, was based on substantial evidence found in the record.

Appellant also raises two issues regarding a neck injury sustained by Appellee and a claim for past medical expenses raised by Appellee. The ALJ held that the neck injury was not work-related and that one of the medical expenses was

not work-related. These issues were found in favor of Appellant, and Appellee did not appeal these issues to this Court. We are unclear as to why Appellant would raise them and conclude they do not need to be ruled upon.

## **CONCLUSION**

Based on the foregoing, we affirm in part, reverse in part, and remand. We reverse the determination that the ALJ needs to reexamine the permanent partial disability award. On remand, the Board should determine whether the ALJ erred in determining whether Appellee was not totally disabled based on the record as is. Also, we remand with instructions to the Board to require the ALJ to determine an impairment rating for each shoulder. The ALJ may still utilize Dr. Bilbo's overall impairment rating and separate it for each shoulder, similar to what occurred in *Plumley*. On all other issues, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

Lori V. Daniel
Lexington, Kentucky

BRIEF FOR APPELLEE VICKIE HENRY:

Gregory N. Schabell, Sr.
Covington, Kentucky