RENDERED: MAY 21, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0976-WC

APPLE VALLEY SANITATION, INC.                                    APPELLANT

v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NOS. WC-17-85280 AND WC-19-00205

JON STAMBAUGH;
HONORABLE RICHARD NEAL,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE: Apple Valley Sanitation, Inc. (Apple Valley) petitions for a

review of an opinion and order by the Workers' Compensation Board (Board)

affirming the Administrative Law Judge's (ALJ) award of benefits to Jon

Stambaugh (Stambaugh). Apple Valley argues that the ALJ was not authorized to

impose the 3x multiplier on each of Stambaugh's two awards. We agree with the Board that the ALJ made sufficient findings to justify the imposition of each multiplier in this case. Hence, we affirm.

Stambaugh worked as a garbage truck driver and loader for Apple Valley from April 1994 to July 11, 2017. He operated a garbage truck on a residential route in Johnson and Lawrence Counties. His position required driving and loading residential garbage at two hundred and fifty to two hundred and eighty stops per day. He previously injured his low back and ribs in 2012 when he slipped and fell while working for Apple Valley. However, he missed no time from that incident.

On April 17, 2017, Stambaugh climbed down from his truck to load garbage. His right knee twisted when he slipped while stepping on loose pavement. He immediately experienced pain, and his knee continued to swell until he sought medical treatment the next day. He reported the injury the same day.

After attempting to treat the knee with ice, Stambaugh sought treatment from Tracy Hamilton Hedrick, APRN ("Nurse Hedrick"). She administered a steroid injection and prescribed a steroid dose pack. Stambaugh then saw Dr. Donald Arms, an orthopedic surgeon, who drained fluid from his right knee. During his assignment on light duty, Stambaugh drove the truck, while an assistant loaded the garbage. Dr. Arms permitted Stambaugh to attempt to

return to regular duty at the end of May 2017. Stambaugh worked until July 11, 2017. He testified his multiple physical problems prevented him from continuing to work afterward. Stambaugh has neither worked nor applied for work since that date.

In support of his claims, Stambaugh filed records and reports from his medical providers. Stambaugh also filed a functional capacity evaluation report from the Ashland Clinic dated August 30, 2018. Stambaugh testified that Drs. Bruce Guberman and Ira Potter both advised him his conditions are work-related. Dr. Guberman noted Stambaugh's complaints of an acute injury to his right knee on April 17, 2017, and cumulative trauma injuries to his neck, back, both shoulders, and both knees on July 11, 2017. Dr. Guberman diagnosed Stambaugh with a chronic post-traumatic strain and aggravation of preexisting dormant degenerative changes of the right knee on April 17, 2017. In addition, he diagnosed Stambaugh with cumulative trauma injuries to the left knee, both shoulders, the cervical spine, and the thoracic spine. Dr. Guberman stated Stambaugh had reached maximum medical improvement ("MMI") by November 28, 2018. He opined all of the conditions he diagnosed were caused by Stambaugh's work for Apple Valley.

Dr. Guberman assessed a 27% impairment rating pursuant to the 5th Edition of the American Medical Association, *Guides to the Evaluation of*

*Permanent Impairment* ("*AMA Guides*").  Of this rating, he assessed 4% for the right knee, 8% for the left knee, 2% to the right shoulder, 7% to the left shoulder, 5% for the cervical spine, and 8% for the lumbar spine.  He also stated Stambaugh does not have the capacity to return to the work performed on the date of his injuries.  Dr. Guberman recommended Stambaugh not sit for more than twenty to thirty minutes at a time, and no more than four to five hours in an eight-hour work day.  He further advised against repetitive arm or leg use, and no lifting of more than twenty-five to thirty pounds occasionally, or more than five to ten pounds frequently.

Dr. Potter initially diagnosed Stambaugh with low back pain, degenerative joint disease in both knees, bilateral shoulder pain, and osteoarthritis. He noted Stambaugh had severe impairment of his functional capacity and was incapable of even minimal sedentary activity.  Dr. Potter found that Stambaugh was unable to lift, stoop, carry, sit, or stand for long periods, and he is totally disabled.  In his later notes, Dr. Potter stated that Stambaugh is able to stand or walk for up to two hours per day, at no more than half an hour at a time.  He indicated Stambaugh is able to sit for up to three hours during a workday, at no more than one hour at a time.  He also stated Stambaugh should never climb, kneel, or crawl.  In his May 23, 2019 report, Dr. Potter noted Stambaugh continued to complain of pain with his osteoarthritis and degenerative joint disease.

Stambaugh also filed Dr. Jack Steel's February 28, 2018 office note. Dr. Steel diagnosed patellofemoral osteoarthritis of both knees, hamstring tightness of both lower extremities, and obesity. He recommended physical therapy to treat the hamstring tightness.

Dr. John Gilbert evaluated Stambaugh on November 28, 2017, at the request of his attorney. Dr. Gilbert diagnosed him with multilevel foraminal stenosis at L4-L5, degenerative joint disease, spondylosis at L3-S1, chronic spinal pain and bilateral radiculopathy, and numbness. He indicated he would proceed with an L3-L5 facet block. Knee x-rays from the Highlands Regional Medical Center indicated Stambaugh had bilateral knee osteoarthritis.

Dr. Arms' record from April 18, 2017 indicates he treated Stambaugh for his April 17, 2017 right knee injury. He also noted Stambaugh had a chronic worsening of his low back pain. In his May 30, 2017 notes, Dr. Arms indicated Stambaugh could work on his regular route with no assistance. But following Stambaugh's continued complaints of pain in his right shoulder, left shoulder and low back, Dr. Arms diagnosed degenerative disc disease. He prescribed medications and referred Stambaugh to a neurosurgeon. The notes from Nurse Hamilton were consistent with those from Dr. Arms.

Dr. Daniel Primm evaluated Stambaugh on May 21, 2019, at Apple Valley's request. He diagnosed a right knee sprain/strain occurring on April 17,

2017, primary osteoarthritis of both knees (right greater than left), rotator cuff tendonitis and impingement syndrome of both shoulders, age-related mechanical low back and neck pain with no radiculopathy. He stated the right knee problem had resolved with no permanent injury. He opined Stambaugh had reached MMI from that injury within eight weeks. He stated Stambaugh has no impairment of the knee due to the work injury. He disagreed with Dr. Guberman's assessments. Dr. Primm stated Stambaugh has a 5% impairment rating for his right shoulder condition, and a 6% impairment rating for his left shoulder condition, both based upon the *AMA Guides*, but neither is related to his work. He stated Stambaugh has no impairment rating for his left knee. He found no cumulative trauma injury to the neck, thoracic spine, low back, right shoulder, left shoulder, or left knee.

Dr. Russell Travis performed a records review and issued a report at Apple Valley's request. In his June 11, 2019 report, Dr. Travis stated Stambaugh has no impairment rating to either his cervical or thoracic spine. He stated Stambaugh has a 5% impairment rating in accordance with the *AMA Guides* for his lumbar spine due to his congenital pars defect, and spondylolisthesis, unrelated to cumulative trauma. He agreed with Dr. Primm's assessment. He stated Stambaugh did not sustain cumulative trauma injuries.

The ALJ rendered a decision on September 18, 2019, finding Stambaugh sustained an acute right knee injury on April 17, 2017, while stepping

from the garbage truck he was driving. Relying upon the opinions of Dr. Travis, the ALJ determined Stambaugh did not sustain a work-related cervical injury. Relying upon Dr. Guberman, the ALJ determined Stambaugh sustained a work-related lumbar spine injury caused by cumulative trauma. Relying upon the opinions of Drs. Primm and Travis, the ALJ determined Stambaugh did not sustain work-related shoulder injuries. Relying upon the opinions of Drs. Guberman and Potter, the ALJ determined Stambaugh sustained a cumulative trauma injury to his left knee. The ALJ determined Stambaugh was not entitled to an award of temporary total disability benefits. The ALJ additionally determined Stambaugh is entitled to medical benefits for his work-related right and left knee, and low back injuries. He awarded permanent partial disability (PPD) benefits based upon a 4% impairment rating for the April 17, 2017 right knee injury. He then awarded PPD benefits based upon an 8% impairment for the left knee injury, and 8% impairment for the lumbar condition, combined to 14% for the July 11, 2017 cumulative trauma injuries. The ALJ enhanced both PPD benefit awards by the 3x multiplier contained in KRS[1] 342.730(1)(c)1. Regarding the application of the three multiplier, the ALJ found as follows:

> The Plaintiff's job was very physical in nature and required him to lift bags weighing up to 100-pounds, as well as get in and out of the garbage truck 250 to 280

---

[1] Kentucky Revised Statutes.

times per day. His abilities shown at the time of his functional capacity evaluation would easily prevent him from being able to perform this job, Dr. Guberman has stated that the Plaintiff lacks the physical capacity to perform the job, and the Plaintiff did not believe that he could return to the job he performed at the time of injury. The ALJ finds these opinions most credible given the totality of the evidence. The ALJ specifically finds that the Plaintiff lacks the physical capacity to return to his job due to both the April 17, 2017, acute injury to the right knee, and the July 11, 2017, cumulative trauma injury, individually and independently. Further, it is undisputed that he currently is earning less than he earned at the time of his injury. As such, he is entitled to have his benefits enhanced by the three multiplier for both injuries.

Stambaugh and Apple Valley each filed petitions for reconsideration. Based upon *Plumley v. Kroger, Inc.*, 557 S.W.3d 905 (Ky. 2018), Apple Valley argued the ALJ erred by enhancing both awards by the 3x multiplier. Apple Valley also requested the ALJ state a specific manifestation date and set out calculations of Stambaugh's average weekly wage for each injury date.

On October 31, 2019, the ALJ sustained Stambaugh's petition for reconsideration, and amended the award of PPD benefits based upon 15% impairment, rather than 14%, for the July 11, 2017 injury. The ALJ denied Apple Valley's petition for reconsideration, finding that Stambaugh had an April 17, 2017 acute injury to the right knee, and the cumulative trauma injury to his neck and low back manifested on July 11, 2017. The ALJ continued to find that Stambaugh lacked the physical capacity to perform the job that he performed at the time of his

April 17, 2017 injury due to his acute right knee injury alone. But the ALJ also concluded that the manifestation of the cumulative-trauma cervical spine and low back conditions further diminished Stambaugh's functional capacity. Based on this finding, the ALJ concluded that both awards were subject to the 3x multiplier.

Apple Valley appealed the ALJ's opinion and award to the Board. The Board affirmed, concluding that the ALJ appropriately made separate PPD awards for the two injury dates, as required by *Plumley v. Kroger, Inc.*, *supra*. Apple Valley now petitions for review to this Court.

"Where the ALJ has found in favor of the party, who had the burden of proof, the Board must determine whether the ALJ's findings were supported by substantial evidence." *Abbott Laboratories v. Smith*, 205 S.W.3d 249, 253 (Ky. App. 2006) (citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." *Id.* (quoting *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971)). As the fact-finder, the ALJ has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Where the evidence is conflicting, the ALJ has the sole authority to believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's

total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). The function of this Court's review is to correct the Board only where the Court perceives that the Board has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

In its petition for review, Apple Valley concedes that the ALJ was authorized to make separate PPD awards for the awards for the April 17, 2017 acute injury and for the cumulative trauma that manifested on July 11, 2017. But Apple Valley argues that the ALJ was not authorized to enhance both PPD awards by the 3x-multiplier set out in KRS 342.730(1)(c)1. That multiplier applies if, after an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury. In particular, Apple Valley argues Stambaugh could not be entitled to the multiplier for both awards because there was no significant change in his job duties between the April 17, 2017 injury and the July 11, 2017 manifestation of his cumulative trauma. Likewise, Apple Valley contends that there was no evidence to support the conclusion that Stambaugh's functional capacity further decreased after July 11, 2017, since the cumulative trauma was not diagnosed until after that date. Essentially, Apple Valley contends that, since Stambaugh was already unable to return to work after the April 17, 2017 injury, he could not be found to be less able

to return to those duties after July 11, 2017.  As a result, Apple Valley contends that the holding in *Plumley* precludes the assessment of the 3x multiplier for both injuries.

But as the Board noted, the Supreme Court in *Plumley* merely held that an ALJ may apply differing multipliers to separate injuries but is not required to do so.  *Plumley*, 557 S.W.3d at 916-17.  In that case, the ALJ found that the employee kept the same job responsibilities throughout the time he suffered his various injuries, and no additional restrictions were imposed until after the subsequent injury.  Consequently, the ALJ found that the employee retained the physical capacity to return to the type of work he performed at the time of his injury.  Based on this finding, the Supreme Court concluded that the ALJ was authorized to use only the "1" multiplier for both awards.  *Id.* at 917.

In this case, the ALJ set out detailed findings that Stambaugh was unable to perform the daily tasks of a garbage truck driver after his April 17, 2017 injury.  Although Stambaugh returned to light-duty work after that date, the manifestation of his cumulative trauma injury further reduced his ability to perform the essential tasks of his position.  As set out in the ALJ's findings in the order denying Apple Valley's petition for reconsideration:

> Nevertheless, the ALJ finds that there is convincing and persuasive evidence in the record that supports a finding that the Plaintiff lacks the physical capacity to return to the job he performed at the time of his April 17, 2017,

acute injury to the right knee, and the July 11, 2017, cumulative trauma injury respectively.

Concerning the Plaintiff's April 17, 2017, acute right knee injury, the Plaintiff testified that he continues to have constant right knee pain, especially when sitting for long periods. Dr. Guberman noted during his evaluation of the Plaintiff in November 2018 that the Plaintiff continued to have constant right knee pain and that his right knee swelled an average of four to five times per week. Dr. Guberman did not believe that the Plaintiff could use his leg in a repetitive fashion, and that the Plaintiff further had functional limitations in his knee. Dr. Potter, the Plaintiff's treating physician, documented the Plaintiff's knee pain as 7/10 as late as May 2019. Dr. Gilbert and Dr. Potter thought that the Plaintiff would eventually require a knee replacement, showing the significance of his condition. The Plaintiff's FCE evaluation concluded that the Plaintiff should never climb stairs or ladders – a mechanism that is similar to getting in and out of a truck. Further, it was further documented that during the FCE that the Plaintiff had knee pain when sitting, standing, walking, climbing, and repetitive trunk rotations while standing. Again, the Plaintiff's job required him to get in and out of his garbage truck 250 to 300 times a day, as well as stand, walk, and perform repetitive trunk rotations while standing. Given the totality of the above circumstances, the ALJ continues to find that the Plaintiff lacks the physical capacity to perform the job that he performed at the time of his April 17, 2017, injury due to his acute right knee injury alone.

Considering the Plaintiff's cumulative trauma cervical spine and low back conditions, the Plaintiff testified that he continues to have constant low back, as well as neck pain to a lesser extent. He stated that he is currently unable to throw garbage bags into the back of a garbage truck. The Plaintiff's lumbar and cervical x-rays showed degenerative disc disease, and his examination

with Dr. Guberman showed range of motion abnormalities. He stated that the Plaintiff had functional limitations in the cervical and lumbar spine. Dr. Guberman credibly opined that the Plaintiff is not able to lift, carry, push, or pull objects over 25-30 pounds, or 5-10 pounds frequently. The Plaintiff's FCE evaluation showed that the Plaintiff could only lift 20 pounds from floor to waist occasionally, 10 pounds from waist to eye level occasionally, and two[-]handed carry 20 pounds. Further the Plaintiff had low back pain when lifting 20 pounds from floor to waist, low back pain when lifting 10 pounds from waist to eye level, low back pain when carrying 20 pounds, low back pain when while sitting and standing, and low back pain with repetitive trunk motion. Again, the Plaintiff's job required him to get in and out of his garbage truck 250 to 300 times a day, as well as stand, walk, perform repetitive trunk rotations while standing, and lift garbage bags weighing up to 100 pounds. Given the totality of the above circumstances, the ALJ continues to find that the Plaintiff lacks the physical capacity to perform the job that he performed at the time of his July 11, 2017, cumulative trauma injury due to low back and neck injury alone. The ALJ notes that the Defendant, in its Petition, indicates that the Plaintiff was working light duty after the acute work injury. However, while the Plaintiff did return to light duty initially, he eventually returned to full duty. It is the Plaintiff's full-duty job duties that the ALJ has considered when determining whether the Plaintiff is entitled to the three multiplier for the cumulative trauma injury.

Contrary to Apple Valley's assertion, the medical proof set out by the ALJ was sufficiently detailed to constitute substantial evidence that the cumulative trauma resulted in a new disability to Stambaugh not already present as a consequence of the April 17, 2017 acute injury. Based on this finding, the ALJ

was authorized to impose the 3x-multiplier to both awards. Consequently, the Board properly affirmed the award.

Accordingly, we affirm the July 13, 2020 opinion and order of the Workers' Compensation Board affirming the September 18, 2019 opinion, order, and award by the ALJ in the above-styled case.

ALL CONCUR.

BRIEF FOR APPELLANT:

W. Barry Lewis
Hazard, Kentucky

BRIEF FOR APPELLEE JON STAMBAUGH:

John Earl Hunt
Allen, Kentucky