RENDERED: JUNE 25, 2009
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2008-SC-000873-WC

SPEEDWAY/SUPER AMERICA        APPELLANT

ON APPEAL FROM COURT OF APPEALS

V.      CASE NO. 2008-CA-001039-WC

WORKERS' COMPENSATION BOARD NO. 99-54592

MAZEN ELIAS; HONORABLE MARCEL
SMITH, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD        APPELLEES

## OPINION OF THE COURT

## AFFIRMING

The court determined in Bevins Coal Co. v. Ramey, 947 S.W.2d 55 (Ky. 1997), that home healthcare services provided by an injured worker's spouse were compensable if they were medically necessary, performed competently, and provided cure and relief from a work-related injury's effects. Relying on the decision, an Administrative Law Judge (ALJ) awarded the claimant benefits for his spouse's services from the date of injury, including future benefits. The Workers' Compensation Board (Board) vacated portions of the award and remanded the claim for additional fact-finding but affirmed otherwise. The Court of Appeals affirmed.

Appealing, the employer asserts that the ALJ lacked jurisdiction to enter the award; that the entire award should be vacated because none of the Forms 114 was "fully completed;" that the award through August 20, 2003, should be vacated because the Forms 114 were untimely; and that the ALJ failed to base the award on substantial evidence. We affirm for the reasons stated herein.

The claimant was severely injured in a work-related motor vehicle accident on December 1, 1999. He sustained a head injury, ruptured spleen, injured adrenal gland, and fractures to his right hip, femur, pelvis, scapula, and right foot. Six unsuccessful orthopedic surgeries left his left leg one and one-half inches shorter than the right. As a consequence, he has ongoing pain, difficulty walking, and must use a wheelchair when away from his home. He also suffers from dementia and a neurocognitive disorder that produces anxiety, depression, short-term memory loss, slurred speech, and impaired judgment.

On October 20, 2003, the claimant's attorney submitted a letter and Form 114 to the employer requesting $104,660.00 in payment for "convalescent care" that the claimant's spouse, Deana Elias, provided from January 1, 2000, through October 20, 2003.[1] Although the form did not list specific services that Deana performed or the name and address of the

---

[1] The claimant continued to receive voluntary temporary total disability (TTD) and medical benefits at that time. He did not file a formal workers' compensation claim until May 2007.

2

physician who ordered the services, the letter provided additional information. It explained that Deana had spent numerous hours providing extensive convalescent care since her husband's accident.

According to the letter, the employer provided a professional home health nurse from 7:00 a.m. through 3:00 p.m. each day from January 1, 2000, through February 2002. Deana cared for him from 3:00 p.m. through 7:00 a.m. each day. She administered medications and nightly injections, assisted throughout the night with trips to the restroom and whatever else was necessary for his comfort, and transported him to and from numerous medical appointments.

The letter indicated that Deana provided round-the-clock care from February 2002 to December 2002, after the employer stopped providing a nurse. Among other things, she changed dressings, administered injections and medications, and monitored IVs; assisted with bed baths, shaving, and shower baths, which involved using a hoist; assisted with bedside toilet needs and cleansing afterwards; cleaned and dressed bed sores and surgical wounds; helped the claimant to dress; and attended continuously to his personal and medical needs. After Deana returned to work in December 2002, she continued to transport the claimant to medical appointments and to assist him with dressing his lower extremities and using the stairs.

The letter requested payment for Deana's services at the rate of $10.00 per hour for eight hours per day from January 1, 2000, through February 1, 2002, although she was "on duty" for 16 hours per day; for eight hours per day

from February 1, 2002, through December 1, 2002, although her actual "on duty" hours increased; and for six hours per day from December 1, 2002, to October 20, 2003.

After the claimant's attorney submitted a Form 114 for the following 60 days, the employer responded. The employer denied the request with respect to the period prior to August 21, 2003, on the ground that it was untimely because 803 KAR 25:096, § 11(1) requires a Form 114 to be filed within 60 days after services are initiated and every 60 days thereafter. The employer "conditionally" denied payment for services provided after August 21, 2003, and requested a physician's statement demonstrating the medical necessity for any services Deana provided; a physician's statement that the claimant could not perform the services himself; and a detailed list of the various activities that Deana performed, including the date, time, and duration of each, in order to evaluate the request.

The claimant's attorney continued to submit Forms 114 approximately every 60 days thereafter, and the employer continued to deny payment because the requested information was not provided. On August 30, 2004, counsel submitted a handwritten note from Deana, stating as follows:

> Degree of help depends on condition.
> Time of accident full care.
> After each injury he required a lot of care.
> Now he is recovering from last injuries [sic] and needs moderate care.
> Dressing (lower extremities); bathing, to the bathroom[,] excersies [sic] (physical therapy would have him do at home)
> Medications, injections and IVs (He is not on these now, but was for about 2 months)

4

> Cleaned and dressed wounds
> Dr. appointments
> Therapy appointments.
> Help in & out of house, car, heat, ice, massaged
> muscles (back & legs)

The employer responded that in order "to fully evaluate whether (1) the services [Deana] is providing are compensable and (2) to determine the amount of time spent in such activities," she should provide a daily breakdown of the activities she provided, "such as a medical provider would keep records." The employer requested her to note "the date, activity, the time the activity began, and the time that the activity ended, along with a description of how Mr. Elias is responding." Despite the request, the claimant's attorney continued to submit Forms 114 that were similar to the previous forms.

The claimant filed a formal application for workers' compensation benefits in May 2007. Deana testified that he required less care over time and was able to take care of more of his personal needs by late 2002. He did, however, continue to have difficulty with walking and balance. He had fallen several times, fractured his wrist once, and continued to need assistance with basic activities of daily living, which required about six hours of her time per day. She stated that at some point the employer offered to allow him to work from home but that he declined because he was having memory problems and "was concentrating on getting better." She described a typical day as follows:

> In the mornings he has some medications he has to
> take on an empty stomach so usually I give those to
> him. He has to wait an hour. Other medicines he
> needs to have with food so therefore I have to wait and
> give him something in the morning to eat and then
> give him his food [sic]. That's what we do before -- his

5

medicine I mean. We also keep an eye on his blood
pressure. Do his --check his sugar levels every
morning. Then basically I head off to work and come
back.

. . .

I come back around 3:00 most days. Some days I have
to come home and check on him at noon. I have done
that before, he's had problems and sometimes fallen
and I'd have to come home and help him. We do
physical therapy when I come in. We do some
strengthening and range of motion and these are
papers that they were given to me by physical therapy.

. . .

They give me directions and papers to follow and when
we were in physical therapy they said it very important
that he keep these up when he wasn't there during the
day, you know, on his own in order to keep his
strength up. Otherwise his muscles and everything
would lock up and he would lose a lot more than he
had already lost. So we do that. He's able, of course,
to feed himself, but he doesn't do any of the cooking.
He doesn't do anything around the house like that
because, you know, he forgets. He's left stuff on, if
he's tried to before. It's dangerous you know.

Deana testified that she did not keep any written documentation of the
nursing care that she provides or the time that she spends doing so. She
explained that working full time and caring for her husband as well as their
five minor children[2] left her with no time to do so. She testified that she could
only estimate how long it had taken her to change a bandage or IV eight years
earlier. She explained that she had no idea what would be involved when the
injury occurred. She stated:

I'm up with him from the time I come in, you know if
he goes anywhere, it's a special trip for--you know, we
have to do special things to take him with us. At night

---

[2] Evidence indicated that the children were age 10, 7, 4, 3, and 6 months at the time
of the accident.

I'm up with him, he's up during the night, I'm up during the night. We use heat--I mean ice. We did use heat in the beginning, now use mostly ice. That feels a little better for him. He uses his Tinz [sic] unit. You know, I get these things for him, I help him, so there's a whole lot that I was not expecting in the beginning.

Deana also testified that the employer knew from the outset that she assisted with the claimant's care but failed to inform her that she needed to document the time she spent caring for him until the attorney submitted the request for payment. She stated that she would not have had time to do so had she known. Asked how she knew what care to provide, she explained that her husband's physicians told her what would be needed and also told her that the home health nurses would show her how to do it, which they did.

Mary T. Moraja, R.N., M.S., a case manager, performed a "home assessment assistance evaluation" in February 2007. She observed the claimant, noting that he was sleepy, had slurred speech, and had great difficulty ambulating. Testifying by report and deposition, she noted that Deana had provided all of the claimant's home health care since 2002 and spent at least six hours per day doing so. According to Moraja, the services included: "dosing of medications three times per day, range of motion exercises two time per day, assistance with showering and grooming daily, assistance with mobility and standby guard assistance, checking blood pressure twice daily, monitoring blood sugar levels using finger sticks twice daily, monitoring his feet for diabetes related ulcers, care of any such ulcers, transporting to and from pool therapy sessions two to three times per week, transportation to and

from physicians appointments three to four times per month, and consulting with [his] physicians regarding his care and medications."

Moraja opined that the claimant would "most certainly" require round-the-clock personal care assistance or be required to live in an assisted living facility without the services that Deana provided. She consulted several vendors and determined that skilled nursing care would cost $100 per visit; private duty care would cost $16.50 per hour; adult day care would cost $60.50 per day; and residence at an assisted living facility would cost $2,500 per month. She recommended an adult day care program or full-time in-home assistance when Deana worked and recommended an assisted living facility if Deana should become unavailable for any reason.

Dr. Corbett reported in March 2007 that he agreed with Moraja's recommendations.

Records indicated that Caretenders provided physical therapy services from January 2000 through June 2000. They documented the types of problems the claimant had at that time.

The employer submitted a report from Kathi Rose, R.N., B.S.N., M.A., C.C.M. Rose explained that the ultimate goal was for a patient to perform self care or, if that was not possible, for the family to provide care independently. She stated that aide care, which involves bathing, dressing, and grooming but no medication management or wound care, costs $15 to $25 per hour, with a three to four hour minimum. The aide receives $7 to $11 of the fee and must generally keep a detailed log of the services provided, observations of the

patient, and the time spent at the patient's residence. She stated that Deana provided services "of a personal nature and consistent with the expectation of a family caregiver."

Deborah Sunday-Dalton, R.N., the employer's supervisor of benefits administration and workers' compensation, stated that home nursing care for the claimant stopped in March 2002. The employer considered no more than custodial care to be necessary at that time. She offered to provide a certified home health aide but Deana declined the offer.

Deana testified in rebuttal that she requested an L.P.N. in March 2002 because the claimant required injections of medication twice per day and had an IV that needed to be changed three times per day. She explained that an L.P.N. could provide such services, but an aide could not. Addressing the employer's offer to allow the claimant to work from home, she testified that he would not have been able to perform work as a customer service agent due to his poor memory, judgment deficits, depression, anxiety attacks, and difficulty in dealing with even family members.

The parties stipulated that the employer had paid approximately $546,000.00 in medical expenses and continued to pay temporary total disability benefits when the claim was heard. The ALJ found the claimant to be permanently and totally disabled, which the employer does not dispute. This appeal concerns the decision to award compensation for six hours of daily care by Deana.

After reviewing the evidence, the ALJ determined that Deana provided services that were compensable under KRS 342.020(1) but submitted an untimely request for payment through August 2003. Convinced that she alleged a reasonable basis for failing to begin to file the required Forms 114 until October 2003, the ALJ excused the delay. Although noting that the documentation accompanying the Forms 114 was less than the employer desired, the ALJ found the forms to be "fully completed," for the purposes of 803 KAR 25:096, § 11(1). Relying on Deana's testimony as well as testimony from nurses Moraja and Rose, the ALJ awarded the claimant $420 per week ($10 per hour for six hours per day) for caregiver services from the date of injury and continuing until modified or terminated by a future order.

Noting that 803 KAR 25:096, § 11(3) was discretionary, the Board determined that reasonable grounds supported the ALJ's decision to excuse the delay in filing Forms 114 and that the forms at issue were "fully completed within the spirit of [803 KAR 25:096, § 11(1)]." The Board also determined that substantial evidence justified an award through August 2003 but vacated the award insofar as it began on December 1, 1999, a date the claimant conceded was earlier than the services commenced. Thus, the Board remanded the claim for a finding concerning the date that Deana began to provide daily care and for the entry of a corrected award. Vacating the award of future benefits, the Board directed the ALJ to order the claimant to continue to file Forms 114 in order to claim future benefits.

## JURISDICTION

The employer asserts that the ALJ lacked subject matter jurisdiction to award Deana compensation because the claimant failed to make her a party to the claim. We disagree. KRS 342.315 grants an ALJ jurisdiction to resolve all questions arising under Chapter 342, which includes those arising under KRS 342.020(1). Moreover, the ALJ did not award Deana compensation.

KRS 342.020(1) entitles the injured worker to compensation for reasonable and necessary medical treatment. Medical benefits are awarded to the injured worker although an employer may pay a provider directly on the worker's behalf. The ALJ awarded benefits to the claimant based on the services that Deana provided. Nothing required her to be made a party.

## 803 KAR 25:096

The employer complains that the ALJ should have dismissed the claim for caregiver benefits because none of the Forms 114 was "fully completed" as required by 803 KAR 25:096, § 11(1) inasmuch as they failed to include a detailed list of the services performed, dates of service, and time required to perform the services. It also complains that the ALJ should have dismissed the claim for the period before August 21, 2003 because the Form 114 for the period was both incomplete and untimely.

803 KAR 25:096, § 11(1) addresses a request for payment for services provided by an individual who is not a physician or medical provider. It requires an individual who provides such services, including home nursing services, to submit a "fully completed" Form 114 to the employer or its carrier

11

within 60 days of the date services are initiated and every 60 days thereafter for so long as they are rendered.

A Form 114 informs the employer that a non-medical provider is performing home healthcare services and seeks payment. A purpose of the form and any accompanying information is to provide sufficient information to enable the employer to determine what services are provided and whether they are compensable. We are not convinced that a family caregiver must always submit detailed records to document each service the individual provides, the amount of time that it takes, and other details. What is sufficient to comply with 803 KAR 25:096, § 11(1) depends upon the circumstances.

An employer has no obligation to pay pre-award medical benefits voluntarily when liability is unclear.[3] An employer or its carrier may not consider a Form 114 in a vacuum. Carriers have an obligation to conduct a diligent investigation for facts warranting an extension or denial of benefits and may not require a worker to obtain information that is accessible to the carrier.[4] Although failure to include detailed information or to answer requests for additional information may provide a carrier with reasonable grounds to refuse to pay the claim unless ordered to do so, it does not preclude an ALJ from considering the evidence of record when deciding the extent to which the services covered by a disputed form are compensable.

---

[3] R. J. Corman Railroad Construction v. Haddix, 864 S.W.2d 915 (Ky. 1993). See also 803 KAR 25.240, § 6(3).

[4] See 803 KAR 25:240, §§ 4 and 6.

Mindful that the courts give great deference to an administrative agency's interpretation of its own regulation,[5] we note that the Board found the forms Deana submitted to be fully completed within the spirit of 803 KAR 25:096, § 11(1). Having reviewed the evidence we agree.

The employer clearly knew the seriousness of the claimant's injuries, had access to all of his medical records, and paid significant medical expenses, including expenses for professional home nursing services from January 2000 through February 2002. Sunday-Dalton testified that she monitored the claimant's treatment closely and offered to provide a nurse's aide thereafter, which Deana declined. The employer submitted therapy notes from Care Tenders that reflected the type of care that the claimant required and continues to require. Although the initial Form 114 provided little detail about the claim for home healthcare, an accompanying letter from the claimant's attorney listed the types of services that Deana provided and explained the basis for the amount sought for each time period the form covered. Although subsequent Forms 114 were similar to the one submitted on October 20, 2003, they were sufficient under the circumstances.

803 KAR 25:096, § 11(3) provides that a failure to submit a timely Form 114 without reasonable grounds "may result in a finding that the expenses are not compensable." It is permissive and does not require an ALJ to deny compensation for the expenses alleged on an untimely Form 114 even when the person submitting the form offers no reasonable grounds for the delay. In the

---

[5] J. B. Blanton Company, Inc. v. Lowe, 415 S.W.2d 376 (Ky. 1967).

13

present case, the services for the period through August 21, 2003, were provided before the claimant filed an application for benefits and, perhaps, before he obtained legal counsel or was informed that he could be compensated for nursing care by a family member. Deana gave a reasonable explanation of the reasons why she failed to prepare and submit a form earlier and the employer points to nothing that required the ALJ to dismiss that portion of the claim simply because the Form 114 was untimely.

## SUFFICIENCY OF THE EVIDENCE

The employer asserts that the claimant failed to offer substantial evidence to show what services Deana performed, when she performed them, or how long they took and also asserts that some of the services were performed "simply as a loving wife" rather than due to medical necessity. The employer complains that the award was improper because the ALJ relied on Deana's "self-serving testimony alone" rather than on documentary evidence "such as daily records, time slips or logs, or lists of activities performed." We disagree.

The claimant had the burden to prove every element of his claim, including that the services Deana provided were medically necessary, performed competently, and for the cure and relief of his injury's effects. The ALJ determined that he satisfied that burden; thus, the question on appeal is whether the decision was reasonable under the evidence.[6] We hold that it was.

The ALJ based the award of caregiver benefits on substantial evidence. The claimant clearly sustained severely disabling injuries for which the

---

[6] Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986).

employer provided some home nursing services from January 1, 2000, through February 1, 2002, and offered the services of an aide thereafter. Deana testified regarding his physical and mental conditions and also testified that his physicians, therapists, and nurses advised her concerning what services to perform and how to perform them. Ms. Mojara listed the services in detail and opined that the claimant required 24-hour personal care, either at home or in an assisted living residence. Dr. Corbett agreed. Testimony from Ms. Rose also supported the claim. The record contained ample evidence that since some point after the injury Deana had provided at least six hours of reasonable and necessary services for the effects of the claimant's injuries each day; that she did so competently; and that $10.00 per hour was reasonable payment.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT,
SPEEDWAY/SUPER AMERICA:

David D. Black
Steven Andrew Oldham
Dinsmore & Shohl, LLP
255 E. Fifth Street
Suite 1900
Cincinnati, OH 45202


COUNSEL FOR APPELLEE,
MAZEN ELIAS:

Frank Jenkins, III
Frank Jenkins Law Office
631 E. Main Street
Lexington, KY 40508