RENDERED:  APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0662-WC

CLEVELAND CONSTRUCTION                                             APPELLANT

PETITION FOR REVIEW OF A DECISION
v.          OF THE WORKERS' COMPENSATION BOARD
ACTION NO. 17-WC-61845

JOSHUA SHACKLEFORD;
HONORABLE MONICA RICE-
SMITH, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD                                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  This petition for review comes to us following a decision by the

Workers' Compensation Board ("Board") affirming the Administrative Law

Judge's ("ALJ") decision granting indemnity and medical benefits to the Appellee,

Joshua Shackleford, for a work-related injury.  Following this decision, Cleveland

Construction ("Cleveland") petitioned our Court for review arguing that the ALJ

erred in relying upon Dr. Jared Madden's medical opinion, which Cleveland alleges is not in compliance with the 5th Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* ("AMA *Guides*"). While any discrepancy could affect Dr. Madden's overall credibility, we cannot agree with Cleveland that the Board erred in leaving the ultimate decision in the ALJ's hands. For the reasons set forth below, we affirm.

## I.  STATEMENT OF THE FACTS

In 2017, Shackleford was employed by Cleveland as a drywall finisher. Shackleford's job was to "mud" the walls for approximately 80 to 100 boards of drywall per day. Although he did not hang the actual boards, Shackleford taped them, mudded the walls, and sanded the drywall. To mud the walls, Shackleford was required to lift and carry five to six five-gallon buckets of mud per shift across a maximum of 100 feet. Each bucket weighed approximately fifty to sixty pounds.

On October 1, 2017, Shackleford sustained a hernia during the course and scope of his employment. That day, Shackleford had been asked to move more buckets of mud than usual. He had carried approximately ten to eleven buckets when he felt a tear in his right groin area below the beltline. Shackleford had sustained a hernia in his left groin area in 2002, so he recognized the feeling. He immediately informed his supervisor, who prepared a report. Shackleford went

to Urgent Care in Berea and was then sent to Berea Hospital for an ultrasound. The ultrasound was negative, and Shackleford was not diagnosed with a hernia at that time. Shackleford went home after his appointment, unable to continue working because of the pain. Despite his continued pain, Shackleford attempted to go to work the next day. However, Shackleford's supervisor informed him that he was no longer needed and sent him home. Shackleford was then unemployed for two or three months.

In 2018, Shackleford took a job at C & N Construction ("C & N"), where he worked on and off for about six to eight months as a drywall finisher. He performed similar work to that which he performed for Cleveland but was not required to carry buckets of mud. Sometimes he could work a full week and sometimes he could not. Although Shackleford wore a strap to keep the hernia pulled in while working at C & N, he eventually left his employment with C & N because he felt he could not physically continue the work required of him. In August 2018, Shackleford sought work at the Cookie Factory but found he was unable to stand on the factory's concrete flooring for his twelve-hour shifts because of the burning and pressure caused by his hernia. As a result, Shackleford's tenure at the Cookie Factory lasted only two weeks.

After his initial injury on October 1, 2017, Shackleford's condition continued to worsen, causing him to seek additional treatment from Dr. Alan

Graham in July 2018. Dr. Graham had previously surgically repaired a left-sided hernia Shackleford sustained in 2002, from which Shackleford had fully recovered. On July 18, 2018, Dr. Graham saw Shackleford for right groin pain and swelling as a result of Shackleford's work injury, at which time Dr. Graham determined that Shackleford had sustained a right inguinal hernia. Dr. Graham surgically repaired Shackleford's right-sided hernia on February 7, 2019, and released him to return to work without restrictions in March 2019.[1] Shackleford has not actively treated his right-sided hernia since his release, and he does not take any medication.

Since approximately July 2019, Shackleford has worked as a self-employed contractor doing drywall finishing. He performs taping, mudding, and sanding for about 30 to 40 hours a week. He is not able to hang drywall anymore and does not carry buckets of mud, but he has other people do those jobs.

Shackleford stated that he has done "pretty well" since surgery. He is able to sit without difficulty but continues to experience burning pain if he stands for six hours or more or if he attempts to lift fifty pounds or more. Although Shackleford testified that he is continuing to improve, he believes it would be too tough to go back to the work he performed at Cleveland. Shackleford stated that he would have difficulty carrying the buckets of mud and would not be able to carry them very far. Shackleford stated that his condition has improved since his

---

[1] Dr. Graham's surgical report was not filed in the record by either party.

surgery and he estimates that he is at "eighty percent." At the hearing, Shackleford stated that he has no protrusions in his abdomen or groin area. An October 11, 2017, ultrasound report shows that there is no evidence of testicular mass or torsion.

Dr. Madden initially evaluated Shackleford prior to Shackleford's February 2019 surgery, noting during his examination, "right inguinal hernia, visible defect, very large and easily palpable. Reducible with manual pressure but defect immediately returns once pressure is released." At that point, he assessed a 19% impairment rating pursuant to the AMA *Guides*, but found that Shackleford had not yet attained maximum medical improvement ("MMI").

Dr. Madden re-evaluated Shackleford on April 19, 2019, following Shackleford's February 2019 surgery, noting the surgical repair of the right inguinal hernia with mesh implantation. Shackleford reported some alleviation of pain in the right groin area after a six-week recovery period but reported continued pain lifting, bending, and twisting. Dr. Madden noted: "right inguinal hernia, previously visible and palpable defect, now repaired and incision well healed." He then diagnosed a right inguinal hernia, status-post surgical repair, observing that Shackleford had had chronic pain consistent with and directly related to the October 1, 2017, work injury. Dr. Madden believed that Shackleford had reached

MMI by the time of his re-evaluation, and he does not retain the physical capacity to return to his former type of work.

Accordingly, Dr. Madden assessed a 12% impairment rating pursuant to the AMA *Guides*, noting, "Class 2 Impairment due to Herniation 12% WPI (10-19% possible), Table 6-9, Page 136." Record (R.) at 130. He opined that, regardless of surgical repair, the right inguinal hernia would restrict Shackleford's ability to work as a heavy laborer. Dr. Madden stated that Shackleford is at an increased risk for additional or worsening herniation in both the left and right inguinal regions and advised that even slight exertion or positional changes could result in severe pain exacerbations or create additional pathology in the right inguinal region. Dr. Madden restricted Shackleford from lifting over twenty pounds, repetitive bending or twisting, and anything more than minimal pulling, stooping, and crouching. He further explained that episodic problems with routine activities of daily living during pain exacerbations are commonly associated with surgically repaired hernias.

Cleveland filed Dr. Greg Snider's June 24, 2019, report. Dr. Snider noted the work injury and subsequent treatment, including the February 7, 2019, open repair of an indirect right inguinal hernia by Dr. Graham. He observed that Shackleford reported no further swelling and pain at rest but complained of pain with prolonged periods of activity. He also noted that Shackleford is able to work

five to six hours a day, five days a week despite a gradually improving sharp and burning pain. He acknowledged that Shackleford may have residual symptoms for at least a short period of time. Dr. Snider's examination revealed: "a well-healed right inguinal scar, soft and nontender. There is no testicular tenderness. No hernia was noted at rest, with position change, or with modified Valsalva maneuver." Dr. Snider assessed a 0% impairment rating for the surgically repaired hernia pursuant to the AMA *Guides*, opining that Shackleford had an excellent surgical outcome, is able to return to work without restrictions, and requires no additional treatment.

Dr. Snider prepared an October 10, 2019, supplemental report after reviewing Dr. Madden's April 19, 2019, report. He reiterated opinions contained within his June 24, 2019, report, stating:

> Dr. Madden's evaluation took place over two months prior to [the June 24, 2019] evaluation; thus, there is certainly room for symptomatic improvement, as one would expect, during that interval. Dr. Madden did not note any deficiencies in the repair of Mr. Shackleford's hernia site. Nonetheless, he assessed 12% WPI based on Class 2 hernia by Table 6-9 of the AMA *Guides*, 5th Edition.
>
> In my opinion, Dr. Madden's impairment assessment method is inappropriate and inaccurate. Table 6-9 requires a palpable defect for impairment assessment of herniation to be applicable. Mr. Shackleford no longer has a hernia. In fact, the AMA *Guides* provides [sic] an example of a persistent hernia described as "only mildly

annoying" and without limitation in activities for which 0% WPI is assessed.

R. at 137 (emphasis in original).

Shackleford filed a claim alleging that he sustained a hernia injury on October 1, 2017, while in Cleveland's employment. Shackleford testified via deposition on November 29, 2018, and at a formal hearing on November 1, 2019. The parties held a Benefit Review Conference on November 1, 2019.

The ALJ reviewed and considered evidence from Dr. Graham, Dr. Madden, Dr. Snider, and St. Joseph Berea Radiology. The parties agreed to a number of stipulations, including that Shackleford sustained a work-related injury on October 1, 2017, that temporary total disability was paid to Shackleford from February 7, 2019, to March 24, 2019, and that Cleveland paid medical expenses on Shackleford's behalf in the amount of $1720.12.

On December 16, 2019, the ALJ rendered her decision, finding that Shackleford sustained a 12% impairment due to the October 1, 2017, hernia injury and awarding Shackleford recovery of related medical expenses, temporary total disability benefits from February 7, 2019, through March 24, 2019, and permanent partial disability benefits commencing on October 11, 2017, and continuing for 425 weeks. In doing so, the ALJ relied upon Dr. Madden's opinion, finding it "most persuasive and supported by Shackleford's testimony." R. at 205. The ALJ denied Cleveland's motion to reconsider on January 13, 2020.

Cleveland appealed to the Board, arguing that the ALJ erred in relying upon Dr. Madden's 12% impairment rating because the rating was inconsistent with Table 6-9 of the AMA *Guides*. Cleveland asserted that Dr. Madden did not discuss a palpable defect in his April 19, 2019, report and that Shackleford admitted that there were no protrusions at the time of the final hearing. According to Cleveland, the lack of a palpable defect prevents a finding of a Class 2 hernia under Table 6-9. On April 24, 2020, the Board issued its opinion affirming the ALJ's judgment as based upon substantial evidence. The Board explained:

> In *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206, 210 (Ky. 2003), the Kentucky Supreme Court explained that the extent of a worker's impairment at particular points in time and the proper interpretation of the AMA *Guides* are medical questions solely within the province of medical experts. In *George Humfleet Mobile Homes v. Christman*, 125 S.W.3d 288 (Ky. 2004), the Court additionally held, while an ALJ is not authorized to independently interpret the AMA *Guides*, he or she may as fact-finder consult the [AMA] *Guides* in the process of assigning weight and credibility to evidence. Although assigning a permanent impairment rating is a matter for medical experts, determining the weight and character of testimony and drawing reasonable inferences therefrom are matters for the ALJ. *Knott County Nursing Home v. Wallen*, 74 S.W.3d 706 (Ky. 2002). Moreover, authority to select an impairment rating assessed by an expert medical witness rests with the ALJ. *See* KRS[2] 342.0011 (35) and (36); *Staples, Inc. v. Konvelski*, 56 S.W.3d 412 (Ky. 2001).

---

[2] Kentucky Revised Statutes.

The AMA *Guides* clearly states its purpose is to provide objective standards for the "estimating" of permanent impairment ratings by physicians. The Kentucky Court of Appeals has instructed that as long as a physician's opinion concerning impairment is "grounded in the AMA *Guides*," the rating may be relied on by the fact-finder for purposes of determining PPD. *Jones v. Brasch-Barry General Contractors, supra*. This Board has routinely held that except under compelling circumstances where it is obvious even to a layperson that a gross misapplication of the AMA *Guides* has occurred, the issue of whether a physician's impairment rating is properly assessed and credible, is a matter of discretion for the ALJ. *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky. App. 1985).

The parties stipulated Shackleford sustained a work-related injury on October 1, 2017. However, there are differing assessments of impairment, both purportedly in accordance with page 136, Table 6-9 of the AMA *Guides*. Dr. Madden determined Shackleford qualified for a Class 2 herniation for which he assessed a 12% impairment rating while Dr. Snider determined he did not qualify for an impairment rating. Dr. Madden clearly stated he assessed the impairment rating pursuant to the AMA *Guides*, citing to the specific page number and table. The ALJ provided a sufficient explanation of her reasonings for accepting Dr. Madden's impairment rating. While we acknowledge it is unclear in Dr. Madden's report whether there was a palpable defect in the supporting structures of the abdominal wall at the time of his April 19, 2019 evaluation, we note he was not cross-examined. Dr. Snider's critique of Dr. Madden's assessment goes to the weight of the evidence and does not compel a contrary result.

Because we determine Dr. Madden's permanent impairment rating was grounded in the AMA *Guides*, we cannot say the ALJ's reliance on his opinion was beyond the scope of her discretion as fact-finder or unreasonable as a matter of law. *Speedway/Super America v. Elias*,

285 S.W.3d 722, 730 (Ky. 2009); *Eaton Axle Corp. v. Nally*, 688 S.W.2d 334 (Ky. 1985). Therefore, it was permissible to rely upon that rating as a basis for the award of PPD benefits. We will not disturb the ALJ's determination based upon Dr. Madden's assessment of impairment, which we determine constitutes substantial evidence.

R. at 264-66.

This appeal followed.

## II.  STANDARD OF REVIEW

Pursuant to KRS 342.285, the ALJ is the sole finder of fact in workers' compensation claims. Accordingly, the ALJ has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence and to draw reasonable inferences from that evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974). "Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009) (citing *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977)).

On review, neither the Board nor the appellate court can substitute its judgment for that of the ALJ as to the weight of evidence on questions of

fact. *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky. App. 1982). "In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion." *Bowerman*, 297 S.W.3d at 866. Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *Carnes v. Tremco Mfg. Co.*, 30 S.W.3d 172, 176 (Ky. 2000).

It falls to the Board to decide whether the ALJ's finding "is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law." *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000); KRS 342.285. "When reviewing the Board's decision, we reverse only where it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012) (citing *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

### III.   ANALYSIS

Cleveland's sole argument on appeal is that the ALJ erred in relying upon Dr. Madden's 12% impairment rating. Cleveland argues that Dr. Madden's opinion was inconsistent with Table 6-9 of the AMA *Guides* because an

impairment rating of 12% based upon Table 6-9 requires two elements: (1) a palpable defect in the supporting structures of the abdominal wall; and (2) frequent or persistent protrusion at the site of the defect with increased abdominal pressure, manually reducible or frequent discomfort, precluding heavy lifting but not hampering some activities of daily living. Cleveland asserts that Dr. Madden did not discuss a palpable defect in his April 19, 2019 report, preventing a finding of a Class 2 hernia under Table 6-9. Cleveland relies upon *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149 (Ky. App. 2006), to support its argument.

In *Brasch-Barry*, the ALJ determined that Jones sustained a 26% impairment from a work-related back injury. *Id*. at 153. In that case, two doctors determined that Jones suffered a "Category III" impairment of 10% under the AMA *Guides*, and only Dr. Reasor determined that Jones had sustained a "Category IV" impairment of 26%. *Id*. The ALJ relied solely upon Dr. Reasor's opinion in his determination despite Dr. Reasor's repeated concessions upon cross-examination that Jones's impairment "properly fell within the 'strict definition' of Category III," not Category IV. *Id*. at 152, 153. Dr. Reasor also opined that "the category definitions in the AMA *Guides* are meant to be used solely as the name of the text implies, as a guide [and] that the category definitions were perhaps flawed or incomplete in this instance." *Id*. at 152. Upon appeal, our Court held that "a physician's opinion must be grounded in the AMA *Guides*, meaning that a

physician's personal antagonism toward the AMA *Guides* . . . is legally irrelevant. And any assessment that disregards the express terms of the AMA *Guides* cannot constitute substantial evidence to support an award of workers' compensation benefits." *Id*. at 154.

Twelve years later, in *Plumley v. Kroger, Inc.*, our Supreme Court revisited the *Brasch-Barry* holding when reviewing a case in which a physician's whole person assessment purportedly did not comply with the AMA *Guides*. 557 S.W.3d 905 (Ky. 2018). In that case, the claimant suffered a recurrent hernia as a result of work injury, and the ALJ assessed a total of 22% WPI, adopting the conclusions of Dr. Snider, who relied upon only one of the two diagnosis-related methods to be used in accordance with Section 15.2 of the AMA *Guides*, which states, "[i]n the small number of instances in which the ROM and DRE methods can both be used . . . ." *Id*. at 913. Our Supreme Court determined that the physician was entitled to determine for himself which method or methods should be used to evaluate his patient:

> Plumley's argument highlights a greater issue in
> Kentucky case law—whether the failure to adhere strictly
> to the [AMA] *Guides* constitutes reversible error. The
> Court of Appeals' statement in *Brasch-Barry* suggests
> that any failure on the part of a physician to adhere
> strictly to the text of the [AMA] *Guides* constitutes
> reversible error, which constitutes the bulk of Plumley's
> argument. Against this argument, Kroger responds that a
> physicians' conclusions must simply be supported by and
> in conformity with the [AMA] *Guides*, only requiring

professional medical judgment to ground itself in, but not so strictly adhere itself to, the [AMA] *Guides.*

. . .

This Court, and presumably the Court of Appeals, views the statement by the Court of Appeals in *Brasch-Barry* in two completely contrasting ways—strict adherence versus general conformity to the [AMA] *Guides.* Notably, the factual circumstances of *Brasch-Barry* shed light on why the Court of Appeals stated its rule the way that it did. The physician in *Brasch-Barry completely ignored* the [AMA] *Guides,* expressing "personal antagonism" toward them. Furthermore, Plumley overlooks other statements by the Court of Appeals in *Brasch-Barry* in the paragraph before the statement in controversy, "Under our law, the AMA *Guides* are an integral tool for assessing a claimant's disability rating and monetary award. So to be useful for the fact-finder, a physician's opinion must be *grounded* in the AMA Guides . . . ."

To be *grounded* in the [AMA] *Guides* is not to require a *strict adherence* to the [AMA] *Guides,* but rather a *general conformity* with them. We also note that the Court of Appeals in *Brasch-Barry* seemingly also did not require strict adherence to the [AMA] *Guides*: "An ALJ cannot choose to give credence to an opinion of a physician assigning an impairment rating that is not *based upon* the AMA Guides." An opinion that is *based upon* the [AMA] *Guides* is different from one that *strictly adheres to* the [AMA] *Guides.*

*Id*. at 912-13.

-15-

We have also examined the unreported decision of this Court

*Amazon.com v. Henry*, which is factually similar to the case at bar.[3] In that case,

Amazon argued in part before our Court that the ALJ could not rely upon the

medical opinion and impairment rating of Dr. James Bilbo because Dr. Bilbo did

not provide measurements indicating how he determined the impairment rating and

allegedly relied upon the wrong impairment rating table found in the AMA *Guides*.

*Amazon.com v. Henry*, No. 2020-CA-0621-WC, 2020 WL 5079337, at *4 (Ky.

App. Aug. 28, 2020). Our Court affirmed the ALJ's reliance on Dr. Bilbo's

opinion, emphasizing *Plumley*'s holding that only a "general conformity" with the

AMA *Guides* is required. *Id*. (quoting *Plumley*, 557 S.W.3d at 914). Our Court

explained:

> Dr. Bilbo also utilized table 16-35 of the AMA Guides to
> determine Appellee's impairment rating. Table 16-35
> concerns measuring strength deficits of shoulders and
> elbows. Appellant points out that the AMA Guides state:
> "Decreased strength *cannot* be rated in the presence of
> decreased motion, painful conditions, deformities, or
> absence of parts ([e.g.,] thumb amputation) that prevent
> effective application of maximal force in the region being
> evaluated." [AMA *Guides*], Section 16.8a, p. 508 (5th
> ed. 2000) (emphasis in original). Appellant argues that
> Dr. Bilbo could not utilize an impairment rating based on
> a strength deficit because Appellee's shoulders had
> decreased motion and painful conditions. We believe Dr.
> Bilbo could still determine an impairment rating even if
> Appellee's shoulders had decreased motion and painful

---

[3] We cite to this unpublished opinion as illustrative of the issue before us and not as binding
authority. CR 76.28(4)(c).

-16-

conditions. Dr. Bilbo's opinion only had to be grounded in the [AMA] *Guides*, not exactly adhere to it. Dr. Bilbo, in his medical opinion, could have concluded that a strength deficit rating for Appellee's shoulders was appropriate in her case. Appellee did not seek to depose or cross-examine Dr. Bilbo as to his methods. In addition, Dr. Shockey did not opine as to whether Dr. Bilbo's methods were incorrect.

*Id.* at *4.

Similarly, it was Dr. Madden's medical prerogative to draw his own medical conclusions when assessing his rating of Shackleford's hernia site so long as they were grounded in the AMA *Guides*. Dr. Madden clearly stated he assessed the impairment rating pursuant to the AMA *Guides*, citing to the specific page number and table. Dr. Madden stated that he assessed Shackleford's impairment rating pursuant to the AMA *Guides* and offered his reasoning for his assessment. Dr. Madden's opinion only had to be "grounded" in the AMA *Guides*, not exactly adhere to it, and as such, Dr. Madden could have concluded that assessing a Class II hernia was appropriate given Shackleford's medical history.

While we acknowledge it is unclear in Dr. Madden's report whether there was a palpable defect in the supporting structures of the abdominal wall at the time of his April 19, 2019, evaluation, we note he was not cross-examined. Because Cleveland did not cross-examine Dr. Madden on his assessment despite having the opportunity to do so, Dr. Madden's exact reasoning for his assessment was unclear. Any bias Dr. Madden may or may not have that may have been

-17-

divulged on cross-examination is therefore nonexistent. Any critique Cleveland now offers, even that of Dr. Snider, goes only to the weight of the evidence and does not compel a contrary result.

The ALJ provided a sufficient explanation of her reasonings for accepting Dr. Madden's impairment rating. "[T]he proper interpretation of the [AMA] *Guides* and the proper assessment of an impairment rating are medical questions," to which our review does not extend. *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206, 210 (Ky. 2003). Dr. Madden and Dr. Snider offered differing assessments Shackleford's impairment, both purporting to comply with page 136, Table 6-9 of the AMA *Guides*. The ALJ was free to weigh the evidence as she saw fit and was free to reject Dr. Snider's conflicting opinion, as well as his critique of Dr. Madden's assessment, in favor of Dr. Madden's opinion. While Cleveland may point to evidence that would have supported a different outcome, the ALJ's failure to rely upon it is not sufficient basis for reversal. *McCloud*, 514 S.W.2d at 47. The ALJ has "sole discretion to determine the quality, character, and substance of evidence." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012). Accordingly, we will not reverse the ALJ's decision.

## IV. CONCLUSION

In light of the foregoing, we AFFIRM the decision of the Workers' Compensation Board.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald J. Neihaus
Lexington, Kentucky

BRIEF FOR APPELLEE JOSHUA SHACKLEFORD:

McKinnley Morgan
London, Kentucky