# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0469-WC

MIZKAN AMERICA, INC.                                           APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2023-CA-0622
WORKERS' COMPENSATION BOARD
NO. WC-20-61494

MACK DYKES;                                              APPELLEES
STEPHANIE KINNEY, ADMINISTRATIVE
LAW JUDGE; AND
KENTUCKY WORKERS' COMPENSATION
BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Mizkan America, Inc. appeals a Court of Appeals decision which affirmed the Workers' Compensation Board's ruling to uphold the opinion, award, and order of an Administrative Law Judge (ALJ) that found Mizkan's former employee, Mack Dykes, has a 5% whole person permanent impairment rating due to a work-related injury to his lower back. Mizkan's sole argument is that the medical report and conclusions adopted by the ALJ in reaching its conclusion did not comply with the AMA *Guides*.[1] After review, we affirm.

---

[1] American Medical Association *Guides to the Evaluation of Permanent Impairment* (5th ed. 2001).

## I. FACTS AND PROCEDURAL BACKGROUND

On October 31, 2016, Dykes began working for Mizkan as an ingredient handler. His job duties required him to gather ingredients, place them into a kettle, and operate a machine. The job necessitated that Dykes be able to lift and maneuver up to fifty pounds and that he be able to stand for approximately six hours per eight-hour shift. On October 9, 2020, Dykes, then forty-nine years old, was sitting in a four-legged rolling chair while at work. Dykes tried to stand up from the chair but got his foot caught underneath one of the chair's legs. Dykes tripped, hit his head on a cabinet, and fell to the floor. He immediately felt low back and left hip pain.

Prior to working for Mizkan, Dykes was treated for low back pain and left radicular leg pain by Dr. Harold Cannon, who performed an L5-S1 discectomy on May 29, 2014. Dykes reported that the surgery resolved his back pain, and he resumed full duty work thereafter. Dykes returned to Dr. Cannon in March 2015 after he heard a "pop" while lifting a bed at work.[2] An MRI revealed degenerative and post-operative changes at Dykes' L5-S1 disks with a new small focal disc extrusion predominately on the left side. Apart from those occurrences Dykes had no other low back issues prior to working for Mizkan, and he passed a mandated functional capacity evaluation (FCE) before he began working for Mizkan in October 2016. Dykes testified that he had no

---

[2] Dykes' Form 101 indicates that he worked at a hospital as an EKG/EEG technician from 2002 to 2015.

issues with his lower back prior to the October 2020 work-related injury other than a "flare up" in 2017 for which he also treated with Dr. Cannon. That issue was ostensibly resolved as Dykes was not on any medical restrictions at the time of the October 2022 work-related injury.

Dykes first sought treatment for his work-related injury on October 12, 2020, three days after the incident. Dr. Audry Rhodes diagnosed a lumbar strain and left hip contusion. Dykes was prescribed pain medication and an order for physical therapy was entered on October 20, 2020, which Dykes attended. He was released to work with restrictions and was referred to a neurosurgeon, Dr. Mike Chou, on January 18, 2021. In February 2021 Dykes returned to Dr. Cannon who reviewed an MRI from January 2021. Dr. Cannon noted that the MRI showed previous central and left paracentral disc herniation and that Dykes "now has a right paracentral component, which is new." Dr. Cannon diagnosed disc disease at L5-S1 and stated that Dykes' disc bulge had worsened. He opined that Dykes' pain was complicated by obesity and a disc bulge without radiculopathy. He did not recommend surgical intervention. Dr. Chou then examined Dykes on March 31, 2021. After reviewing the January 2021 MRI, Dr. Chou opined that Dykes injured his pelvis and sacroiliac area as a result of the work incident. He referred Dykes to pain management for a left sacroiliac (SI) joint injection.

Dr. Thomas O'Brien performed an independent medical examination (IME) on April 30, 2021, at Mizkan's request. Dr. O'Brien diagnosed a minor buttock contusion and placed Dykes at maximum medical improvement (MMI).

3

He did not believe Dykes' back pain was related to work accident and instead attributed it to his multilevel lumbar degenerative disk disease and arthritis. He assessed a 0% whole person impairment rating and opined that Dykes required no further treatment and could return to his pre-injury work.

Dykes treated at Commonwealth Pain Associates from May 4, 2021, through November 2, 2021, with Dr. Nicholas Winters. Dr. Winters' diagnosis was degenerative lumbar intervertebral disk and SI joint inflammation. Dykes received a left SI joint injection on May 4, 2021, which provided 70% pain relief for three weeks. He then began lumbar epidural steroid injections (LESI) in August 2021, which provided some relief for three weeks. In his last visit to Dr. Winters in November 2021, he received a Depo-Medrol injection and another LESI.

Dykes also treated with Bluegrass Internal Medicine from August 19, 2021, to November 9, 2021. On August 19, Leslie Phelps, APRN, ordered Dykes off work until October 30, 2021, with a plan to reevaluate his condition in three months. On November 10, 2021, Ms. Phelps reviewed Dykes' recent FCE and opined he was not fit to perform his functions as an ingredient handler for Mizkan. She recommended that he seek long-term disability benefits.

Dykes was released by Mizkan in November or December 2021; he was unable to pass Mizkan's FCE and Mizkan was no longer willing to tolerate his accommodations. He filed a "Form 101" Application for Resolution of a Claim

on December 23, 2021, alleging a work-related injury to his back[3] and later filed an additional claim for a psychological work-related injury that is not at issue in this appeal.

On February 1, 2022, Dr. Timothy Wilson performed an IME at the request of Dykes' counsel. Dr. Wilson noted Dykes' 2014 lumbar surgery with Dr. Cannon and reviewed Dykes' post-work injury treatment records from Dr. Rhodes, Dr. Cannon, Dr. Chou, and Dr. Winters. He also performed a physical examination. Dr. Wilson diagnosed "a worsening of a preexisting L5-S1 disc herniation with a prominent right paracentral component that was a change from previous MRI" and placed him at MMI as of December 2021. Dr. Wilson's impairment rating was as follows:

> Mr. Dykes has a permanent impairment of 5% whole person. Based on Table 15-3 on page 384 of the *AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition,* he has a 13% whole person impairment based upon a history of a herniated disk with associated radiculopathy. The patient did have a preexisting impairment based upon his prior back surgery using the range of motion [(ROM)] method with a surgically treated disk lesion without residual signs or symptoms which results in an 8% whole person impairment. Therefore, subtracting that 8% preexisting impairment from his 13% current impairment would attribute a 5% whole person impairment to the injury at work on October 9, 2020.

Dr. Wilson placed Dykes on a restriction of lifting no more than fifteen pounds and opined that he could not return to his pre-injury employment. He recommended that Dykes seek a sedentary, light duty job.

---

[33] Dykes' Form 101 also claimed injuries to his head and left hip, but the ALJ later dismissed those claims due to Dykes' failure to present any evidence indicative of permanent injury. Dykes did not challenge that ruling.

Following Dr. Wilson's IME, on April 6, 2022, Dr. O'Brien filed a supplemental report in which he disagreed with Dr. Wilson's findings. Dr. O'Brien first asserted that Dr. Wilson's conclusion that Dykes was without residual symptoms following Dr. Cannon's 2014 surgery was inaccurate, citing his treatment with Dr. Cannon in 2015 and his "flare up" in 2017. He then criticized Dr. Wilson's impairment rating conclusions as follows:

> Dr. Wilson's (sic) combined the [diagnosis related estimate (DRE)] method with the Range of Motion Method to arrive is (sic) at 5% permanent partial impairment, which he inappropriately assigns to the minor work incident. This methodology does not follow the recommendations for the determination of impairment in the AMA Guidelines to the Evaluation of Permanent Impairment, Fifth Edition. Mr. Dykes has a pre-existing 13% permanent partial impairment to the whole person using Table 15-3 (384) (DRE category III). His current impairment is unchanged.

> Mr. Dykes sustained at most a minor buttock bruise as a result of the minor slipping incident. Mr. Dykes' ongoing complaints of chronic back pain are attributable to the progressive natural history of his pre-existing, previously documented, multilevel degenerative disc disease, prior failed low back surgery with ongoing residual symptoms, morbid obesity, and diabetes mellitus.

After a hearing, wherein Dykes was the sole witness, the ALJ issued an opinion, award, and order finding, *inter alia*, that Dykes had a 7% permanent partial disability rating: a 5% impairment rating was assigned for his physical injury based on Dr. Wilson's conclusions and 2% was assigned for his psychological injury.

The sole issue before the ALJ that is now relevant to this appeal was Mizkan's assertion that Dr. Wilson did not comply with the AMA *Guides* in determining that Dykes had a 5% work-related whole person impairment

6

rating.[4]  It relied entirely on Dr. O'Brien's supplemental report in doing so.  Dr. O'Brien and Dr. Wilson both agreed that Dykes had a current 13% whole person impairment rating due to his prior back surgery based on Table 15-3, page 384 of the AMA *Guides*, utilizing the DRE method.  They also agreed that Dykes had a pre-existing impairment.  But Dr. O'Brien believed the entire 13% was pre-existing due to his 2014 discectomy and therefore attributed 0% to his work incident.  In contrast, Dr. Wilson believed only 8% was pre-existing, and attributed the remaining 5% to his work-related injury.  Dr. Wilson determined the 8% pre-existing impairment by using the ROM method rather than the DRE method.  The crux of Dr. O'Brien's argument, and by extension Mizkan's, was that that Dr. Wilson was not permitted under the AMA *Guides* to "mix and match" methodologies in calculating Dykes' impairment rating, and therefore the ALJ could not rely on his impairment rating.  The ALJ disagreed with Mizkan and ruled as follows:

> Mizkan argues the ALJ is "legally precluded" from assessing impairment for the physical injury.  Essentially, Mizkan argues Dr. Wilson's assessment of impairment is not in accordance with the AMA Guides.  This ALJ reviewed Dr. Wilson's impairment rating and it appears to be a reasonable assessment considering Dykes' increased objective lumbar findings.  Thus, this ALJ finds Dykes retains 5% permanent impairment due to the work injury.  Also, this ALJ finds Dr. Wilson's rating is grounded in the AMA Guides per *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149 (Ky. 2006).

---

[4] Mizkan did not opt to depose Dr. Wilson pursuant to 803 KAR 25:010 §10(8), nor did it object to his report being filed in accordance with 803 KAR 25:010 §10 (6)(b). Nevertheless, both the benefit review conference order and the ALJ's opinion and order reflect that "proper use of the AMA *Guides*" was a contested issue.

Mizkan thereafter appealed to the Board and presented the same argument, which it rejected, holding:

> Dr. Wilson stated Dykes' current impairment rating, based on the AMA *Guides* utilizing Table 15-3 on p. 384, is 13%. He noted a history of a herniated disk with associated radiculopathy. Dr. O'Brien also assessed a 13% whole person impairment rating. Where the two physicians differ is whether Dykes suffered any work-related impairment. Dr. Wilson diagnosed a worsening of a pre-existing L5-S1 disc herniation with a prominent right paracentral component which was different from a previous MRI. He subtracted 8% for pre-existing impairment to arrive at a 5% work-related impairment rating.
>
> Dr. O'Brien believed the pre-existing impairment is 13% based on the prior surgery and ongoing symptoms. Therefore, he opined there was no worsening of impairment related to the work injury. Dr. O'Brien contends Dr. Wilson inappropriately used the ROM method to determine the pre-existing impairment (8%), but he used the [DRE] method to obtain Dykes' current impairment. Dr. O'Brien noted the DRE method is preferred, and the mixing and matching of the two methods is not in accordance with the AMA *Guides*. He believed if the ROM method was utilized to determine the prior impairment, the result would have been 11%.
>
> Fundamentally, Dr. Wilson believes Dykes suffered additional injury from the work event, particularly a worsening of a pre-existing L5-S1 disc herniation with a prominent right paracentral component which is a change from the condition depicted on the previous MRI. Dr. O'Brien believed the work event caused a minor buttock contusion.
>
> When physicians genuinely express medically sound but differing opinions as to the severity of a claimant's injury, the ALJ has the discretion to choose which physician's opinion to believe, so long as the opinion is based on the AMA *Guides*. *Jones v. Brasch*, 189 S.W.3d 149, 153 (Ky. App. 2006). It is for the ALJ, and not this Board, to make a finding when analyzing this conflicting evidence. "The proper interpretation of the Guides and the proper assessment of an impairment rating are medical questions." *Plumley v. Kroger, Inc.*, [557 S.W.3d 905 (Ky. 2018)]. It is also the ALJ's sole authority as fact-finder to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *AK Steel Corp. v. Adkins*, 253 S.W.3d 59 (Ky. 2008).

8

A rating or award may not conform to KRS 342.730 or the AMA *Guides* when the wrong edition is utilized or separate impairment ratings were added when the AMA *Guides* explicitly state this is not to be done. *George Humfleet Mobile Homes v. Christman*, [125 S.W.3d 288 (Ky. 2004)]; *Central Baptist Hospital v. Hayes*, 2012-SC-00752-WC, 2013 WL 4623489 (Ky. Aug. 29, 2013) (Designated Not To Be Published). Neither occurred in the present case. An ALJ cannot utilize an impairment rating expressed in a medical opinion that is not based on the AMA *Guides*, however strict adherence to the AMA *Guides* is not required. *Plumley v. Kroger, Inc., supra.* The essential point is that assigning an impairment rating must be left to the physicians. The authority to select an impairment rating assigned by an expert medical witness rests with the ALJ. *Staples, Inc. v. Konvelski*, 56 S.W.3d 412 (Ky. 2001); KRS 342.0011(35)-(36).

Here, the two physicians expressed conflicting opinions regarding the degree of injury and the proper method to be utilized in assessing an impairment rating Dr. Wilson explained he used the AMA *Guides* in assessing the impairment rating and described the changes he observed to Dykes' lumbar condition. The impairment rating found by the ALJ is supported by substantial evidence.

Mizkan then appealed the Board's ruling to the Court of Appeals and again asserted that Dr. Wilson's impairment rating failed to comply with the AMA *Guides*. The Court of Appeals unanimously affirmed the Board. *Mizkan America, Inc. v. Dykes*, 2023-CA-0622-WC, 2023 WL 5654430 (Ky. App. Sept. 1, 2023). The court succinctly stated that its standard of review is "to correct the Board only where [this] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause a gross injustice." *Id.* at *2 (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). And that it "perceiv[ed] no such error." *Mizkan*, 2023 WL 5654430 at *3. It noted that *Plumley*, upon which the Board relied, "holds that strict adherence to the

9

Guides is not required[,]" and that "[a]s was her prerogative, the ALJ chose to rely upon Dr. Wilson, whose opinion constitutes substantial evidence to support the award." *Id.*

Mizkan has now appealed to this Court raising the same argument.

## II. ANALYSIS

The role of the Court of Appeals in reviewing the Board is "to correct the Board only where [the] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp.*, 827 S.W.2d at 687–88. Further review from this Court is limited to addressing "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 688.

It is well-established that "the ALJ is the sole, undisputed finder of fact in workers' compensation cases" and therefore has singular "'authority to determine the quality, character[,] . . . substance[,]' and weight of the evidence presented, as well as the inferences to be drawn from the evidence." *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149, 152 (Ky. App. 2006). This Court is consequently without authority to "'substitute its judgment' for that of the ALJ[.]" *Id.* at 153. In that vein, "[t]he proper interpretation of the Guides and the proper assessment of an impairment rating are medical questions." *Plumley v. Kroger, Inc.*, 557 S.W.3d 905, 913 (Ky. 2018). And "if the physicians in a case genuinely express medically sound, but differing, opinions as to the

10

severity of a claimant's injury, the ALJ has the discretion to choose which physician's opinion to believe." *Brasch-Barry*, 189 S.W.3d at 153. The only limitation on that discretion, that is relevant here, is that an ALJ cannot give credence to an opinion that is not "based upon the AMA Guides." *Id.*

In *Plumley*, this Court expounded that for a medical opinion to be "based in the Guides" simply means that it is "grounded in the Guides," it does not mean that an opinion must strictly adhere to the Guides. 557 S.W.3d at 912-13. Examples of instances wherein a physician's opinion was not based on or grounded in the Guides, and therefore could not be relied upon by the ALJ as substantial evidence, include when a physician assigns an impairment rating that is double the amount called for by the Guides due to his personal disagreement with, and antagonism towards, the Guides. *Brasch-Barry*, 189 S.W.3d at 153-54. Or, when a physician utilizes the wrong edition of the Guides in determining an impairment rating. *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396 (Ky. 2015). Or, when a physician combines two impairment ratings that the Guides explicitly state should not be combined. *Central Baptist Hosp. v. Hayes*, 2012-SC-000752-WC, 2013 WL 4623489, *2 (Ky. Aug. 29, 2013) (combining impairment ratings for gait derangement and arthritis).

In this case, we cannot say that Dr. Wilson's opinion was not grounded in or based on the Guides simply because he "mixed and matched" the ROM and DRE methods to determine Dykes' impairment rating. Mizkan agrees with Dr. Wilson's determination reached under the DRE method that Dykes has a current 13% whole person impairment rating. Its argument is that Dr. Wilson

11

should have also used the DRE method, rather than the ROM method, to determine that 8% of his current impairment was pre-existing. But Mizkan has cited nothing from the Guides that explicitly forbids the "mixing and matching" of the DRE and ROM methods to determine an impairment rating. In fact, Mizkan cites page 381 of the *Guides*, which seems to indicate that mixing the methods is permissible, it states: "If the previous evaluation was based on the DRE method and the individual is now evaluated with the ROM method and prior ROM measurements do not exist to calculate a ROM impairment rating, the previous DRE percent can be subtracted from the ROM ratings." Granted, this is the opposite of what Dr. Wilson did in this case (subtracting ROM from DRE rather than DRE from ROM), but the point is the combination of the two methods is at least contemplated by the Guides.

We agree with the Board's conclusion that, at bottom, the ALJ was presented with two differing medical opinions regarding whether all of Dykes' current 13% impairment rating was attributable to his 2014 surgery, or whether some percentage could be attributed to his work-related injury. And, because we cannot say that Dr. Wilson's conclusions were not based on or grounded in the Guides, the ALJ's decision to rely on Dr. Wilson's opinion is not subject to reversal.

### III. CONCLUSION

Based on the foregoing, we affirm.

All sitting. All concur.

12

COUNSEL FOR APPELLANT:

Joel Walter Aubrey
Pohl Aubrey Gray, PSC


COUNSEL FOR APPELLEE, MACK DYKES:

Timothy Jay Wilson
Wilson & McQueen


WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey


ADMINISTRATIVE LAW JUDGE:

Hon. Stephanie Kinney